UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **WILLIAM DITULLIO** | **CIV. ACTION NO. 5:25-00018** |
| **VERSUS** | **JUDGE S. MAURICE HICKS, JR.** |
| **STATE FARM FIRE & CASUALTY COMPANY, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to remand [doc. # 12] and an associated request for oral argument [doc. # 12-7] filed by Plaintiff William DiTullio. The motion is opposed. For reasons assigned below, IT IS RECOMMENDED that the motion to remand be GRANTED. Furthermore, IT IS ORDERED that the request for oral argument is DENIED AS MOOT.

### Background

On or about February 22, 2022, William DiTullio ("DiTullio") suffered severe and disabling injuries when he was "viciously and ferociously attacked" by "Onion," a large, aggressive dog owned by Hui Ting "Jennifer" Liang ("Liang"). (Petition for Damages, ¶¶ V-VIII, XX [doc. # 1-3]). The attack occurred just outside Liang's front door when DiTullio arrived to retrieve his own dog that Liang had been dog sitting. *Id*., ¶¶ IV, VIII. DiTullio and Liang were matched by Rover.com, an electronic dog-sitting website and application that brings dog owners and prospective dog sitters together. *See* 1st Suppl. and Amend. Petition [doc. # 1-10].

Within two months after the attack, DiTullio, via counsel, made a claim with Rover.com for the injuries that he sustained from the dog attack. *See* April 27, 2022 Letter/Email from H.

Harris to E. Perry, Jr.; Notice of Removal, Exh. G [doc. # 1-9]. Rover.com replied, however, that, by agreeing to the terms of service, DiTullio had released Rover.com from liability for any claims arising out of interactions occurring via the Rover platform. *Id*. Rover.com further explained that DiTullio's injuries were not covered by their program and he was not insured by Rover.com. *Id*. Instead, Rover.com encouraged DiTullio to speak with Onion's owner, i.e., Liang, or to make a claim with her homeowner's insurance policy. *Id*.

Four months later, on August 23, 2022, DiTullio filed the instant lawsuit against Liang[1] and her homeowner's liability insurer, State Farm Fire and Casualty Company ("State Farm") in the First Judicial District Court for the Parish of Caddo, State of Louisiana. (Petition for Damages [doc. # 1-3]).

Liang and State Farm filed their responsive pleadings on September 21 and 22, 2022, respectively. (Answers; Notice of Removal, Exh. H [doc. # 1-10]). Thereafter, the parties commenced and exchanged discovery. Over one year later, on October 10, 2023, counsel for Liang issued subpoenas duces tecum, together with records deposition notices, to DiTullio's various medical providers that included a return date of November 29, 2023. *See* Notices; Notice of Removal, Exh. H. [doc. # 1-10].

On November 14, 2023, DiTullio purportedly made a $1 million settlement demand to Liang and State Farm. *See* Def. Opp. Memo., pg. 7 [doc. # 15].

Over two months later, on January 25, 2024, Liang executed an affidavit confirming that her only insurance coverage for Onion's attack on DiTullio was her $100,000 liability policy

---

[1] DiTullio incorrectly sued Hui Liang and Ting Liang as separate individuals, but they are additional names for the same person. *See* Answer; Notice of Removal, Exh. H [doc. # 1-10].

with State Farm. (Affidavit of No Other Insurance; Def. Opp. Memo., Exh. [doc. # 15-1]). She added, however, that, because DiTullio retained her services through the Rover app, it was possible that there was additional insurance coverage while she "was employed through the Rover app to watch [DiTullio's] dog . . ." *Id*.

A further eight months passed before, on September 30, 2024, DiTullio, Liang, and State Farm executed a document titled, "*Gasquet* Settlement and Release" ("Settlement Agreement"), whereby DiTullio agreed to settle his claims against Liang and State Farm for the sum of $101,000, while reserving his right to pursue claims against non-settling entities and insurers who may provide coverage for A Place for Rover, Inc. ("Rover") as a result of the subject dog attack. *See* Settlement Agreement; Pl. M/Remand, Exh. A [doc. # 12-2]).

On October 15 or 16, 2024, DiTullio filed his First Supplemental and Amended Petition ("FSAP") to add Rover as a Defendant in the suit. (FSAP; Notice of Removal, Exh. H). DiTullio alleged that, at all relevant times, Liang was acting within the course and scope of her employment with Rover and/or acting as Rover's agent. *Id*., ¶ X(e). Consequently, Rover was vicariously liable for Liang's negligence or fault as an employee or agent of Rover. *Id*., ¶ XIX(a).

On October 18, 2024, DiTullio filed a motion for voluntary partial dismissal of his claims against Liang and State Farm, while reserving his rights against them as nominal Defendants to the extent that there was any valid and collectible insurance coverage afforded to Liang by any insurer for Rover. (M/Vol. Dismissal; Notice of Removal, Exh. H). The state court granted the motion that same day. *See* Order of Dismissal with Reservation of Rights; Notice of Removal, Exh. H.

3

On January 6, 2025, Rover removed the suit to federal court on the basis of diversity jurisdiction. (Notice of Removal).

On February 3, 2025, DiTullio filed the instant motion to remand. Rover filed its opposition on March 7, 2025. (Def. Opp. Memo. [doc. # 15]). DiTullio filed his reply brief on March 21, 2025. (Pl. Reply Brief [doc. # 16]). Accordingly, the matter is ripe.

### Analysis

In his motion, DiTullio asserted four grounds in support of remand, with the first three pertaining to Liang's purportedly ongoing presence in the suit as a (1) non-diverse, (2) non-consenting, and (3) forum-domiciled defendant. *See* 28 U.S.C. §§ 1332, 1446(b)(2)(A), and 1441(b)(2). In response, Rover persuasively asserted that DiTullio's remand arguments tied to Liang's Louisiana domicile are ineffective because Liang remains no more than a nominal defendant against whom DiTullio has no reasonable possibility of recovery. Therefore, her presence must be disregarded for the purposes of subject matter and removal jurisdiction. *See Roby v. Britton*, Civ. Action No. 20-2257, 2020 WL 7768513, at *2–3 (E.D. La. Dec. 30, 2020).

The Court, however, need not definitively resolve the foregoing dispute, because DiTullio advanced an additional basis for remand that suffices to carry the day:[2] the removal of this suit over 28 months after the action was commenced in state court is barred by the one-year limit on the removal of diversity cases prescribed by 28 U.S.C. § 1441(c)(1). In its response, Rover argues that the one-year time limit on removal is inapplicable because DiTullio acted in bad faith to prevent Rover from removing the case. Indeed, "Congress created an exception to

---

[2] *James v. Whitney*, Civ. Action No. 20-0203, 2021 WL 3044149, at *1 n.1 (W.D. La. July 19, 2021) (because the court finds that the case should be remanded based upon untimely removal, it need not reach any of the remaining arguments).

[the one-year] time bar where 'the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.'" *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 292 (5th Cir. 2019), *as revised* (Aug. 23, 2019) (quoting § 1446(c)(1)).

In assessing bad faith, the question is whether the plaintiff's litigation conduct was intended "to prevent a defendant from removing the action." *Id.* As the removing party, it is Rover's burden to show that DiTullio acted in bad faith. *TK Trailer Parts, LLC v. Long*, Civ. Action No. 20-2864, 2020 WL 6747987, at *5 (S.D. Tex. Nov. 2, 2020), *R&R adopted,* 2020 WL 6743738 (S.D. Tex. Nov. 17, 2020) (citation omitted). Bad faith ordinarily requires clear and convincing proof. *Id.*; *Kruger v. Altom Transp., Inc.*, Civ. Action No. 24-0528, 2025 WL 1085220, at *3 (E.D. Tex. Apr. 10, 2025).

Applying the foregoing principles here, it is manifest that DiTullio had a viable claim against Liang from the time the suit was commenced until he entered into the Settlement Agreement with her. Indeed, he settled his claims against Liang and her insurer for the policy limits. Therefore, as both sides recognize, even if DiTullio had sued Rover from the suit's inception, the case would not have been removable until DiTullio settled with Liang. Consequently, Rover necessarily is compelled to argue that DiTullio intentionally delayed the progression of the case, and the subsequent settlement with Liang, in order to prevent Rover from being able to remove the case.

Rover's effort to establish DiTullio's bad faith has two prongs. Rover first relies on a timeline of the case's progression to show that nothing was done in the case for an eight-month period from March 16, 2023, until November 14, 2023, when DiTullio demanded $1 million from Liang and State Farm to settle the suit. Rover also emphasizes that DiTullio was aware of

5

his potential claim against Rover from the suit's inception, but inexplicably failed to join Rover until well after the case's one-year anniversary. Rover posits that because DiTullio offers no explanation for the delay in joining Rover, the only logical conclusion is that it was for the purpose of forum manipulation.

The Court is not persuaded. In the undersigned's experience, it is becoming increasingly infrequent for cases in federal court to resolve within one year of their commencement. Moreover, delays may be even more common in the state courts where the judges may not issue early scheduling orders with trial dates and concomitant deadlines. Further, while Rover contends that zero depositions were taken in this case, it conspicuously fails to acknowledge that, in October 2023, i.e., two months after the case's one-year anniversary, Liang was still issuing records depositions notices. In short, discovery remained ongoing beyond the one-year deadline.

In addition, there is no evidence that Liang and State Farm were complicit with DiTullio in slow-walking the case or otherwise had a tacit understanding between themselves to withhold execution of the settlement agreement until well after the one-year removal deadline. In fact, Liang did not execute her Affidavit of No Other Insurance until January 25, 2024, which, again, was well after the one-year removal deadline.

Rover contends that the absence of any bonafide explanation for DiTullio's decision not to sue Rover originally means that the delay must have been for the purpose of thwarting removal. However, this argument turns the burden of proof on its head. It is not plaintiff's burden to prove he acted in good faith; it is defendant's burden to prove bad faith. *Kruger v. Altom Transp., Inc.*, Civ. Action No. 24-0528, 2025 WL 1085220, at *5 (E.D. Tex. Apr. 10,

2025) (defendant's contention, however, improperly places the burden on plaintiffs. Plaintiffs do not bear the burden of showing the *absence* of bad faith, but rather, defendant must demonstrate the *existence* of bad faith).

In any event, DiTullio reached out to Rover prior to filing suit, but Rover denied all responsibility, including the availability of any insurance coverage, and, instead, directed DiTullio to pursue a claim against Liang's insurer. DiTullio did just that. It was only after he exhausted those efforts and secured Liang's policy limits did he formally assert a claim against Rover in a longshot attempt to secure additional coverage for his serious injuries.

Furthermore, while Rover decries the alleged absence of any explanation for DiTullio's actions save for the purpose of foiling removal, it nevertheless proceeded to list several ways that it was prejudiced by the delay, none of which pertains to removal. For example, Rover stated that some discoverable information may no longer exist, it lost the opportunity to procure an independent medical examination prior to DiTullio's surgery, and now it will have to subpoena Ms. Liang to appear at a deposition. (Def. Opp. Brief, pg. 8). While some of these alleged harms are overstated, they tend to show other tactical (albeit, unsavory) reasons for the delay that serve to undermine, rather than support, Rover's argument that there is no other explanation apart from obstructing removal.[3]

---

[3] Judge Jackson in the Middle District of Louisiana made a similar observation in an analogous case:

> Defendants failed to establish bad faith within the meaning of § 1446(c)([1]). The plain words of the statute require that the bad faith conduct be for the purpose of preventing a removal. Defendants asserted that the plaintiffs timed their late amendments with the intention of not giving them enough time to prepare for trial. Defendants did not assert that the purpose and timing of the amendments was to prevent them from removing the case. Nor did the defendants cite any authority

7

In sum, Rover has failed to establish by clear and convincing evidence (or by a preponderance, for that matter) that DiTullio acted in bad faith to prevent it from removing the action. Therefore, because this diversity case was removed more than one year after it was commenced in state court, which represents a defect in the removal process timely raised by plaintiff, remand is required. 28 U.S.C. §§ 1446(c)(1) and 1447(c).

## Conclusion

For the reasons detailed above,

IT IS RECOMMENDED that the motion to remand [doc. # 12] filed by Plaintiff William DiTullio be GRANTED, and that this matter be remanded to the First Judicial District Court for the Parish of Caddo, State of Louisiana, whence it was removed. 28 U.S.C. § 1447(c). Furthermore,

IT IS ORDERED that the request for oral argument [doc. # 12-7] is DENIED AS MOOT.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections

---

supporting the proposition that these circumstances could support a finding of bad faith under § 1446(c)([1]). Furthermore, the defendants did not explain how adding them to the case earlier, before the settlement, would have given them the opportunity to timely file a Notice of Removal. So long as the plaintiffs had a pending state court suit alleging viable claims against the in-state defendants, Everest National and National Liability could not have removed the case whether they were added before or after one year from commencement of the state court suit.

*Day v. W. World Ins. Co.*, Civ. Action No. 14-0348, 2014 WL 4373301, at *5 (M.D. La. Sept. 3, 2014).

8

within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party, except on grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district judge.**

In Chambers, at Monroe, Louisiana, on this 9TH day of July, 2025.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE